UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SUSAN MAHARA, )<br>)<br>      Plaintiff  )<br>)<br>      vs.  )<br>)<br>ANDREW SAUL, COMMISSIONER )<br>OF SOCIAL SECURITY, )<br>)<br>      Defendant  ) | CAUSE NO. 1:19-CV-187 RLM |

OPINION AND ORDER

Susan Mahara seeks judicial review for a second time of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons stated in open court at the hearing on March 9, 2020 and summarized below, the court again reverses the Commissioner's decision and remands for further proceedings.

Ms. Mahara alleges disability as of June 28, 2013 due to multiple physical and mental impairments, but primarily chronic migraine headaches. The Commissioner denied her first application, but another judge of this court reversed and remanded for further proceedings. *See* Mahara v. Berryhill, Cause No. 1:15cv328 (N.D. Ind. Feb. 17, 2017).

In the interim, Ms. Mahara filed a second application, which was approved.

The Administration found that her migraines met the requirements of a listed impairment (specifically Listing 11.3) as of January 13, 2015 (the onset date alleged in the new application) and awarded benefits as of that date.

After the decision denying Ms. Mahara's first application was reversed and remanded, the ALJ held two hearings – one on December 7, 2017 and the next on December 6, 2018. During the second, the ALJ testimony from agency medical expert Dr. Eliza Pierko and vocational expert Robert Bond. The ALJ concluded that: Ms. Mahara retained the residual functional capacity to perform light work with limitations; she couldn't perform her past relevant work as a school nurse, registered nurse, and office nurse, but was capable of performing other work that existed in significant numbers in the national economy; and she wasn't disabled within the meaning of the Act from June 28, 2013 (the original alleged onset date) through January 12, 2015. More specifically, the ALJ found that:

- Ms. Mahara had severe physical and mental impairments, including degenerative disc disease, migraine headaches and occipital neuralgia, depression and PTSD, as well as non-severe physical impairments (gastrointestinal issues (ulcers and hiatal hernia), periocardial effusion due to a previous migraine medication (Methergine), and postmenopausal syndrome).

- Her impairments, alone and in combination, didn't meet or equal the severity of any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1, specifically Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of spine), 11.02 (epilepsy), 12.04 (depressive disorders), 12.06 (anxiety disorders), and 12.15 (trauma and stressor-

- related disorders).[1]

- Ms. Mahara's statements about "the intensity, persistence and limiting effects of [her] symptoms [was] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] opinion", *e.g.,* she remained active despite the headaches, traveled/vacationed with her husband, intended to continue working, but couldn't find a job that was a "good match for her skills, strengths and interest", worked briefly at her husband's bar, and took care of her grandson a couple of days a week at various times.

- Statements made by Rudolf Mahara, the claimant's husband, Mona Carmean (an acquaintance), and Fabi Macias (a co-worker who stated that Ms. Mahara suffered from headaches on "nearly a daily basis"and frequently left work early) were entitled to "no weight" because they weren't from acceptable medical sources, were subjective, were inconsistent with the record, and/or "the accuracy of the opinion [was] very doubtful."

- The opinion of Ms. Mahara's consulting physician, Dr. Julian Freeman (who opined that her impairments were of listing severity), was entitled to "less weight" because he was hired by plaintiff's attorney, didn't personally evaluate the claimant and, may not have been "fully knowledgeable about the agency's current listings".

- The opinions of Ms. Mahara's treating physicians, Dr. Hary Ailinani (who opined that Ms. Mahara would miss more than 3 days per month due to pain and or headaches, if she had to work full time, and would be on task less than 70% of the day due to headaches) and Dr. Mark Tatara (who stated that he "would support medical disability from intractable headaches") were entitled to "less weight" than the opinion of the agency's medical expert, Dr. Eliza Pierko, who opined that: "the possibility of the claimant missing work due to migraine headaches/occipital neuralgia would depend on how the claimant responds to treatment", "the severity of the migraine headaches/occipital neuralgia did not meet the requirements of Listing 11.02", and "while there may have been a point in time during

---

[1] There is no listing for migraine headaches, so the ALJ used the listing for epilepsy as an equivalent.

the relevant period that the severity of the migraine headaches/occipital neuralgia medically equaled the requirements of Listing 11.02...she [could not] assume that the claimant has had about the same number of migraine headaches or episodes of occipital neuralgia in one month that she has had in another month."

- The opinions of the state agency medical consultants, Drs. J. Sands and David Everetts, and psychological consultants, Randal Horton, Psy.D., and Maura Clark, Ph.D., regarding Ms. Mahara's physical and mental limitations were entitled to "less weight" because the ALJ disagreed with their conclusions and the psychological consultants used the wrong criteria.

- Ms. Mahara had the residual functional capacity to perform light work with the following limitations: she could/should sit for 3 hours at a time and a total of 6 hours in an 8-hour day; stand for one hour at a time and a total of 4 hours; walk for 1 hour at a time and a total of 4 hours; frequently balance, stoop, kneel, crouch and crawl; avoid exposure to unprotected heights, dust, odors, fumes and pulmonary irritants, extreme cold, heat and vibration; tolerate occasional exposure to moving mechanical parts, operating motor vehciles, humidity and wetness; avoid exposure to bright lights and moderate noise; understand, remember, and carry out simple instructions and tasks; make judgments on simple work-related decisions; respond appropriately to occasional interactions with coworkers, supervisors, and the general public and usual work situations; and deal with routine changes in a routine work setting.

- Based on the vocational expert's testimony at the December 6, 2018 hearing, Ms. Mahara could not perform her past relevant work, but could perform other work that existed in significant numbers in the national economy, including small parts assembler (200,000 jobs), small products assembler (250,000 jobs), and mail sorter (28,000 jobs), and so wasn't disabled within the meaning of the Social Security Act.

When the Appeals Council denied Ms. Mahara's request for review, the ALJ's January 24, 2019 decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal

followed.

Ms. Mahara contends that the ALJ erred in: (1) weighing the medical evidence, specifically the statements of her treating physician, Dr. Ailinani; (2) assessing her residual functional capacity; and (3) evaluating the testimony regarding her symptoms and their limiting effects. The Commissioner responds that substantial evidence supports the ALJ's findings with respect to the medical evidence and credibility, and that "resolution of evidentiary conflicts lies within the exclusive domain of the ALJ." Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 541 (7th Cir. 1992).

Dr. Hary Ailinani began treating Ms. Mahara for pain management in December 2013 and continued to treat her through the time at issue. In December 2014, he completed a questionnaire prepared by Ms. Mahara's attorney in which he indicated or opined that:

• Ms. Mahara has "chronic headaches, migraines, cervical facet arthrapathy, myofacial syndrome, occipital neuralgia, chronic pain syndrome";

• she has headaches in excess of 15 days a month that range from 1-5 days, that are not responding to treatment "on a sustained basis";

• side effects from medication included nausea and fatigue;

• Ms. Mahara would generally be precluded from performing basic work activities and need a break from the workplace when she has a headache;

• other sources of pain include C 3-4 right posterior disc herniation

5

impinging on the right C4 nerve, mild disc bulging/spondylosis;

• Ms. Mahara would have trouble focusing, maintaining attention, and concentrating, would experience dizziness and fatigue, would likely be absent from work more than three days a month, and would be "on task" less than 70% of the work day due to headaches and chronic pain.

The ALJ assigned "less weight" to Dr. Ailinani's opinion because he provided it on a form prepared by Ms. Mahara's attorney, rather than "an objective form routinely used by him for any patient"; his opinion on absenteeism and percentage of the day she'd be on task was inconsistent with her being able to work despite having headaches "half of each month"; and an October 28, 2014 progress note indicated that although Ms. Mahara continued to have migraines, her medication (Nucynta) was "working effectively," Botox had decreased her migraine intensity, and she had just returned from a trip to Alaska (the ALJ concluded that her "ability to travel great distances for long periods of time" were "contrary to [Dr. Ailinani's] opinion"). The ALJ's opinion is thorough, but her findings about the medical source opinions generally, and Dr. Ailinani's specifically, aren't supported by the evidence.

The form Dr. Ailinani completed didn't herd the doctor into conclusions without explanations; if anything, it organizes the doctor's thoughts into a more useful form. The ALJ indicated that there were inconsistent opinions about the number of days that Ms. Mahara would miss and the percentage of time she

would be off task, but those inconsistencies aren't apparent to the court.

This court's 2017 order addressed the purported conflict between Ms. Mahara's activities and Dr. Ailinani's opinions and its reasoning about Ms. Mahara's activities remains unchanged. That Ms. Mahara may have traveled, worked briefly at her husband's bar, and taken care of her grandson doesn't rule out the possibility that she suffers migraine headaches multiple times a month. So too, the court sees no inconsistency between the opinions of Dr. Ailinani, the pain specialist who had repeated contacts with Ms. Mahara and Dr. Eliza Pierko, whose opinion was shaped by the absence from the medical records of a specific number of headaches for each month, leaving her unable to find three consecutive months in which Ms. Mahara suffered at least three incapacitating headaches. Dr. Pierko simply didn't have enough information to render an opinion as to whether Ms. Mahara was, or was not, disabled within the meaning of the Social Security Act. Indeed, the record is devoid of any source who said Ms. Mahara would *not* miss more than three days of work a month, making her unemployable in the opinions of the vocational expert.

Under the circumstances, the court would be hard-pressed to find that the ALJ's residual functional capacity assessment and credibility determinations , which were based, at least in part, on her assessment of Dr. Ailiani's opinions, were supported by substantial evidence.

Whether Ms. Mahara became disabled within the meaning of the Social

Security Act at any time before January 13, 2015 is for the Commissioner to decide, but the ALJ's decision in this case doesn't provide the logical bridge from the evidence to her conclusions.

The Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED.

ENTERED: March 23, 2020

 /s/ Robert L. Miller, Jr.
Judge
United States District Court